UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Debbie Ann Anderson, | ) | Civil Action No. 5:15-3110-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | OF MAGISTRATE JUDGE |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

A.      Procedural History

On May 23, 2012, Plaintiff filed an application for DIB alleging a disability onset date of January 20, 2011. Tr. 141-42. Her claim was denied initially, Tr. 62, and upon reconsideration, Tr. 72, and Plaintiff requested a hearing, Tr. 92-93. On September 20, 2013, a hearing was held before an Administrative Law Judge ("ALJ") and testimony was taken from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. 26-51. On March 14, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 7-20. Plaintiff requested review of the decision from the Appeals Council. Tr. 5-6. The Appeals Council denied review on June 25, 2015, making the ALJ's decision the Commissioner's final decision for purposes of

judicial review. Tr. 1-3. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed August 7, 2015. ECF No. 1.

B.    Plaintiff's Background

Born in June 1965, Plaintiff was 45 years old on her alleged onset date of January 20, 2011. Tr. 177. On her form Disability Report Plaintiff noted that she completed the 12th grade and did not attend special education classes. Tr. 182. However, at the administrative hearing Plaintiff testified that she was one subject short of completing the 12th grade. Tr. 45. Plaintiff's past relevant work ("PRW") was that of a direct care provider in a mental retardation center and a certified nursing assistant ("CNA") in a nursing home. Tr. 182. Plaintiff listed back problems and high blood pressure on her Disability Report as the medical conditions limiting her ability to work. Tr. 181.

C.    Administrative Proceedings

1.    Plaintiff's Testimony

At the September 20, 2013 administrative hearing, in response to questions from the ALJ Plaintiff testified that her highest level of education was twelfth grade, she was not currently taking any classes, she was not working, and she had last worked in January 2011 at Woodruff Manor nursing home. Tr. 30. Plaintiff clarified that she was asked to return to work on April 16, 2011; however, Plaintiff indicated that when she did she had swelling in her feet and was unable to work after one day. *Id.* Plaintiff testified that her back was her most serious problem and she had two back surgeries in 2009 and 2011. Tr. 30-31. Plaintiff testified that after the first surgery she "did better" but after the second surgery her leg pain ceased however her "back pain was worse." Tr. 31. Plaintiff testified that she "started having pains radiating down from the hips to the legs again." Tr. 31-32. Plaintiff stated that she had an MRI after the second surgery to "make

sure that everything was in place because [she] was having so much pain." Tr. 32. Plaintiff testified that the MRI showed that "[e]verything was still attached, and [the doctor] was telling [her] that the lower back pains that [she] was going to continue to have, and there was nothing else he could do surgical wise." *Id.* Plaintiff stated that she had no MRIs since the 2011 MRI. *Id.* Plaintiff later clarified that she did not have an MRI in 2011, but instead it was an x-ray. Tr. 33. Plaintiff testified that she has not gone to the emergency room because of back pain because she does not have insurance and because she "usually would do like soaking baths" and "take Tylenol or something like that, to try to get some kind of relief from it." Tr. 34. Plaintiff testified that she had a functional capacity evaluation in May 2012 for worker's compensation purposes. *Id.* Plaintiff stated that worker's compensation insurance "covered the hospital . . . the surgeon and all [her] medical bills when [she] went as for to the doctor, and then the medicine, but the doctor released [her]." *Id.* Plaintiff stated there was no ongoing coverage. Tr. 35.

Plaintiff testified that she can care for herself, but her daughter does her hair because her right hand sometimes "locks down" due to carpal tunnel. Tr. 35. Plaintiff testified that Dr. Bernard diagnosed her with carpal tunnel a year ago but because she still had problems she went to Lawrence Community Care[1] and was provided a brace. *Id.* Plaintiff stated her left hand also "was doing it" but that it was "not like the right one." *Id.* Plaintiff testified that she is right-handed. *Id.* Plaintiff stated that she can still use her hand but she will lose feeling in her hand and any item she is holding will slip out of her hand. Tr. 36. Plaintiff stated she is unable to wash dishes because she gets lower back pains and muscle spasms from standing. *Id.* Plaintiff stated she can brush her teeth and wash her hands standing over the sink but that she sometimes sits on the toilet lid or she will "tilt" instead of trying to bend. Tr. 36-37. Plaintiff stated that if she wants

---

[1] The correct name of the facility is Laurens County Community Care Center. *See* Tr. 529-36.

to take a soaking bath she has to have someone help her. Tr. 37. Plaintiff testified that she can bend over "a little" but if she bends too far her "back will go out." *Id.* Plaintiff stated she is unable to pick up something from the ground and will ask her grandchildren for help. Tr. 37-38. Plaintiff stated she can "tote a loaf of bread" but would have a problem with a gallon of milk. Tr. 38. Plaintiff testified she can stand for about 10-to-15 minutes, but she is constantly "up and down" even at night. *Id.* Plaintiff stated that she does not have a comfortable position. *Id.* Plaintiff testified that she takes "soaking hot baths" to help with her back pain, and she was given Tramadol but it did nothing to help. Tr. 39. Plaintiff testified that her doctor "stated surgically wise, everything that'd been done that can be done." *Id.* Plaintiff testified that she had a nerve conduction study done before the second surgery but could not remember if she had one after the second surgery. *Id.* Plaintiff's counsel confirmed that he was not aware of one and that pain management was through 2009. *Id.*

Plaintiff testified that she lived with a friend and her son and that they helped her. Tr. 40. Plaintiff testified that she used to work as a CNA. *Id.* Plaintiff testified that she had swelling in her ankles and feet if she walked or stood. *Id.* Plaintiff stated that her doctor thought the swelling could be from her back problems or arthritis. *Id.* Plaintiff testified that she was prescribed a "water pill" in addition to the one that is in her blood pressure medication and that it made a little difference. Tr. 41. Plaintiff stated that she has diabetes and as a complication of diabetes she has neuropathy. *Id.* Plaintiff testified that her doctor is unable to prescribe her medication for the neuropathy at present because she needs to complete a different medication so that it will not affect her blood pressure. *Id.* Plaintiff stated that her blood pressure symptoms include headaches, sometimes nosebleeds, and grogginess. *Id.*

In response to questions from her counsel Plaintiff testified that she had recently visited [Laurens County] Community Care Clinic and received prescriptions for Lortab and for the antibiotic Cephalexin. Tr. 42. Plaintiff testified that she was prescribed the antibiotic for treatment of what the doctor thought might be shingles with a bacterial infection. *Id.* Plaintiff testified she first had shingles a year before and it lasted one week but this time it was in her chest area and had lasted for two weeks. Tr. 43. Plaintiff testified that before she had problems with her right hand she was able to dress herself better, wash dishes, do "a little light housework[,]" and comb her hair. *Id.* Plaintiff testified that the doctor she was seeing related to her hand left his practice and so she then switched to the clinic. Tr. 44. Plaintiff testified that she also has "real bad sinus" and the medicine she has been prescribed "dries [her] out so, [she] have headaches all day" for which she takes Tylenol. *Id.*

Plaintiff testified that she is five feet nine inches tall and weighed 248 pounds. Tr. 45. Plaintiff stated that plus or minus two or three pounds that has been her typical adult weight. *Id.* Plaintiff said she has been talked to about losing weight but has not had any success. *Id.* When asked if she had completed high school Plaintiff testified that she "went through the twelfth grade [and] only had one subject of getting a high school diploma." *Id.*

In follow-up the ALJ asked Plaintiff when her right hand started bothering her and Plaintiff responded that it had been over a year. Tr. 45. Although Plaintiff testified that she had been to the doctor more than once in the last eight or nine months the ALJ noted that he had no records from that period and had no records after November 2012. Tr. 46. Plaintiff indicated she was seeing Dr. Bernard and he closed his practice in July; her last visit to him would have been in April 2013. *Id.* The ALJ indicated he would leave the record open so that Plaintiff could provide information from Dr. Bernard and while waiting on the records Plaintiff should undergo

a physical consultative exam to check her grip strength. *Id.* The ALJ asked Plaintiff what parts of her body had arthritis and Plaintiff indicated she had arthritis in her arms, shoulders, lower back, and legs "down by the knees." Tr. 47-48.

       2.     VE's Testimony

After qualifying VE Adger Brown as an expert, the ALJ asked him if Plaintiff had any sedentary work and the VE responded in the negative. Tr. 48. The ALJ posed a hypothetical to the VE, asking him to "assume an individual of the claimant's same age, education, and work experience limited to sedentary exertional work, occasional posturals such as climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, should avoid exposure to excessive vibration, respiratory irritants, hazards and unprotected heights." *Id.* After clarifying that the work would be limited to sedentary and unskilled the VE identified the following available jobs: assemblers, 1,600 in South Carolina, 106,000 in the U.S., representative Dictionary of Occupational Titles ("DOT") number 732.587-10; quality control examiners, 450 in South Carolina, 14,000 in the U.S., DOT number 739.687-182; hand packers, 250 in South Carolina, 14,000 in the U.S., and representative DOT number 920.687-030. Tr. 49. The ALJ asked if it would be acceptable for those jobs if the individual had to sit and stand about every 30 minutes. *Id.* The VE responded that the individual "could probably do some of those jobs, but . . . the numbers would be reduced by about 50 percent across the board." *Id.* The VE also testified that the job base would not be dramatically eroded if the individual "could frequently, but not constantly hand, finger and feel with the dominant hand[.]" *Id.* The VE stated that if it was limited to occasionally "that would eliminate work at the sedentary level." *Id.*

The ALJ asked the VE to "assume the same limitations as in hypothetical number three, but assume the individual would be off task about 20 percent of the time for a combination of

reasons." Tr. 49. The VE responded that if a person were off task that much on a consistent basis

he did not believe there would be any jobs the person could perform. Tr. 50.

The ALJ reiterated that he was going to order a consultative exam for Plaintiff. *Id.*

Plaintiff's counsel had no questions for the VE, but noted that he planned to obtain another MRI,

Dr. Bernard's records after November 2012, and any records from the clinic where Plaintiff was

being seen currently. *Id.*

II.    Discussion

A.    The Commissioner's Findings

In his March 14, 2014 decision, the ALJ made the following findings of fact and

conclusions of law:

> 1.    The claimant meets the insured status requirements of the
> Social Security Act through March 31, 2015.
>
> 2.    The claimant has not engaged in substantial gainful activity
> since January 20, 2011, the alleged onset date (20 CFR 404.1571 *et
> seq.*).
>
> 3.    The claimant has the following severe impairments:
> degenerative disc disease of the lumbar spine, status post lumbar
> fusion at the L5-S1 level in 2009, status post lumbar fusion at L4-5
> level in 2011, obesity, and carpal tunnel syndrome (20 CFR
> 404.1520(c)).
>
> 4.    The claimant does not have an impairment or combination
> of impairments that meets or medically equals the severity of one
> of the listed impairments in 20 CFR Part 404, Subpart P, Appendix
> 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.    After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) except for work
> requiring climbing ladders, ropes, or scaffolds; concentrated
> exposure to respiratory irritants, vibration, heights, or hazards;
> more than occasional balancing, stooping, kneeling, crouching,
> crawling, or climbing stairs or ramps; or more than frequent
> handling or fingering.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on June 4, 1965 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR. 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 20, 2011, through the date of this decision (20 CFR 404.1520(g)).

Tr. 12-20.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.      Analysis

Plaintiff alleges the following errors: (1) the ALJ erred in failing to consider the opinion of Dr. Rana that Plaintiff could sit for only four hours during an eight-hour work day; (2) the ALJ erred by failing to consider significant evidence in his assessment of Plaintiff's credibility; (3) the ALJ erred in failing to properly assess the effect of Plaintiff's obesity; (4) the ALJ erred in finding Plaintiff had a high school education; (5) the ALJ erred by failing to ask the VE adequate hypothetical questions; and (6) the final administrative determination was not supported by substantial evidence. Pl.'s Br. 1-2, ECF No. 14.

1.      Consideration of Consultant's Opinion

Plaintiff asserts the ALJ erred by failing to address the limitation in Dr. Tony Rana's functional capacity evaluation wherein he opined that Plaintiff could sit for only four hours during an eight-hour work day because the regulatory definition of sedentary work requires a worker to sit at least six hours out of an eight-hour work  day. Pl.'s Br. 16. The Commissioner contends "the ALJ considered Dr. Rana's opinion and substantial evidence supports the ALJ's determination that Dr. Rana's decision only warranted moderate weight." Def.'s Br. 12.

One month after the administrative hearing, on October 25, 2013, Dr. Tony Rana conducted a Disability Evaluation of Plaintiff. Tr. 543-46. After his physical examination of Plaintiff, Dr. Rana's impression was as follows: "History of instrumentation of lumbosacral spine in 2011 without residual complication, subjective symptoms of lower back pain." Tr. 546. In addition to the evaluation report Dr. Rana completed a Range of Motion Chart for Orthopedic Exam and indicated Plaintiff had normal range of motion for all parts of her body except her lumbar spine. Tr. 547-48. He indicated Plaintiff's lumbar flexion was 50 degrees while the normal range of motion is 90 degrees, and her lumbar extension and lateral flexion were both 20 degrees while the normal range of motion is 25 degrees. Tr. 547.

On January 20, 2014, Dr. Rana completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Tr. 550-55. He opined Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry 11 to 20 pounds, and never lift and carry over 21 pounds. Tr. 550. He noted Plaintiff could sit, stand, and walk for one hour at a time without interruption; and sit for four hours total, stand for three hours total, and walk for two hours total in an eight-hour work day. Tr. 551. He indicated that Plaintiff did not require the use of a cane to ambulate. *Id.* Dr. Rana opined that Plaintiff could continuously reach, handle, finger, and feel with both her right and left hands, but could only occasionally push/pull with both hands. Tr. 552. He indicated Plaintiff could occasionally operate foot controls with her right foot and left foot. *Id.* Dr. Rana indicated Plaintiff could occasionally climb stairs and ramps and balance, but could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. Tr. 553. As far as environmental limitations, Dr. Rana noted that Plaintiff could never be exposed to unprotected heights, moving mechanical parts, or vibrations; but she could occasionally operate a motor vehicle; tolerate exposure to humidity and wetness; and be exposed to dust, odors, fumes and

pulmonary irritants, extreme cold, and extreme heat. Tr. 554. Dr. Rana indicated that based on Plaintiff's physical impairments she could shop, travel without a companion for assistance, ambulate without assistive devices, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace without use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, or use paper/files. Tr. 555.

Here, in making his findings regarding Plaintiff's impairments and residual functional capacity ("RFC") the ALJ considered Plaintiff's medical treatment records, medications, hearing testimony, and reported activities. Tr. 13-18. In his decision, the ALJ determined that Plaintiff had the RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) except for work requiring climbing ladders, ropes, or scaffolds; concentrated exposure to respiratory irritants, vibration, heights, or hazards; more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing stairs or ramps; or more than frequent handling or fingering." Tr. 16. The referenced regulation does not put a specific time limit on a claimant's ability to sit and instead defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The DOT's definition is similar and provides that sedentary work "involves sitting most of the time, but may involve walking or standing for brief periods of time." *See* DOT, Appendix C, IV, at http://www.occupationalinfo.org/appendxc_1.html. However, the undersigned notes that SSR 96-9p, the ruling that explains the implications of an RFC for less than a full range of sedentary work, defines the full range of sedentary work and

provides that sitting "would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185 at *3. The undersigned notes that the ALJ did not assign Plaintiff to the full range of sedentary work, but determined she could do sedentary work with additional restrictions.

Contrary to Plaintiff's allegation that the ALJ failed to consider the opinion of Dr. Rana, in making his RFC determination the ALJ considered Dr. Rana's January 2014 medical source statement, specifically noting Dr. Rana's opinion that Plaintiff "could sit for an hour without interruption and for a total of four hours in an eight hour workday[.]" Tr. 17. The ALJ did not however, as Plaintiff states, give Dr. Rana's report and findings significant weight; he gave the opinion moderate weight and noted that he "reduced the exertional level to sedentary after considering Dr. Hodges' functional opinion of no lifting over ten pounds."[3] *Id.* Interestingly, in a letter to the ALJ in February 2014, Plaintiff's counsel asked the ALJ to give less weight to Dr. Rana's opinion, stating the following:

> It is important to keep in mind that Dr. Rana saw [Plaintiff] only one time for a consulting examination. He is not a treating source. And, because [Plaintiff] suffers from chronic pain, the treating physicians are in a better position to assess the nature, extent, and severity of her pain and the functional impact it causes. Therefore, Dr. Rana's opinions concerning [Plaintiff's] functional abilities should be accorded *limited* weight.

Tr. 241-42 (emphasis added).

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the

---

[3] On August 2, 2011, Plaintiff's surgeon, Dr. Philip Hodge of Southeastern Neurosurgical and Spine Institute, noted that Plaintiff could do light work with no lifting over 10 pounds, and no

weight afforded a particular opinion." *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (per curiam) (unpublished) (internal citation & quotation omitted); *see also* 20 C.F.R. § 404.1527(d)(2).

Other than Dr. Rana's report, no other physicians mention sitting restrictions and Plaintiff points to no medical evidence that supports the opinion of Dr. Rana that she is limited to sitting four hours in an eight-hour day. Plaintiff alleges only that the ALJ failed to consider the limitation—an allegation that is not true as noted above. The undersigned notes that Plaintiff does not mention the portion of Dr. Rana's opinion that indicates Plaintiff could frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds. Tr. 550. As defined by the regulations, this would qualify Plaintiff to do light work. 20 C.F.R. § 404.1567(b) (defining light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

In this case, the ALJ's discussion of the evidence in the record is sufficiently specific to make clear to the court the weight he gave to Dr. Rana's opinion and the reasons for that weight. In particular, in describing the medical evidence related to Plaintiff's impairments, the ALJ noted that Plaintiff underwent a consultative examination with Dr. Rana in October 2013 that "was unremarkable, except for prominent thenar and hypothenar eminences and decreased lumber flexion." Tr. 16. The ALJ also described in detail a number of additional examination/treatment reports made by Plaintiff's treating physicians that included an ultimate determination by Plaintiff's surgeon in January 2011 that she was permanently restricted to light work with a ten-pound lifting restriction with no bending or twisting.[4] Tr. 15. The ALJ continued his discussion

---

bending or twisting. Tr. 480.

[4] The ALJ noted that in "March, 2011, Dr. Hodges checked a box indicating 'unable to work.'" Tr. 17. The ALJ gave that opinion "light weight because it is not explained, it is not consistent

of medical opinions in explaining his RFC assessment and he also described Plaintiff's reported activities of daily living, including her report to Dr. Rana that she "could drive (not long distances), bathe, dress herself, watch television, read, walk outside, do dishes, and wash clothes." Tr. 18 (citing ex. 17F, page 2 at Tr. 544). The ALJ noted that in making his RFC finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." Tr. 16. The ALJ determined that "the objective medical evidence does not support the severity alleged by the claimant." *Id.*

The undersigned finds that Plaintiff's allegation that the ALJ failed to properly consider the opinions and findings of Dr. Rana to be without merit and recommends this challenge to the ALJ's decision be dismissed.

### 2.    ALJ's Assessment of Plaintiff's Credibility

Noting that she "worked full-time every year from 1985 through 2008" and returned to work after her back surgery in 2009 and "worked all of 2010 and until January, 2011," Plaintiff asserts that the ALJ did not consider her "strong and consistent work record" in assessing her credibility. Pl.'s Br. 17. Plaintiff contends that her work ethic is "strong evidence" that she "was a highly motivated worker and supports a finding that her testimony concerning the nature, extent and severity of her condition and the limitations resulting therefrom are credible." *Id.* The Commissioner argues that "[w]ork history is only one of many factors of consideration in assessing an individual's subjective complaints . . . [and] an ALJ need not discuss explicitly each element of a regulation in order to account substantively for the regulation factors." Def.'s Br. 13. The Commissioner contends "the ALJ expressly discussed and considered Plaintiff's work

with Dr. Hodge's (sic) other opinion, and it is an issue reserved for the Commissioner." *Id.*

record in his decision" and "substantial evidence supports the ALJ's determination that Plaintiff's claim of disabling limitations was overstated." *Id.* at 13-14.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which

that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .”). When evaluating a claimant’s symptoms an ALJ is to consider not only the objective medical evidence, but should also “consider all of the evidence presented, including information about [the claimant’s] prior work record, [her] statements about [her] symptoms, evidence submitted by [her] treating or nontreating source, and observations by [the agency’s] employees and other persons.” 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ thoroughly discussed Plaintiff’s impairments and objective medical evidence, Tr. 13-16, and determined that “the objective medical evidence does not support the severity alleged by the claimant[,]” Tr. 16. The ALJ then discussed the medical opinions, Plaintiff’s medications, her testimony, and her reported daily activities and found that “[b]ased upon the overall record, including the testimony of the claimant . . . the claimant’s non-severe and severe impairments, in combination, produce certain limitations. However, she has retained the functional capacity stated above.” Tr. 18 (citations omitted). Although the ALJ twice noted in his decision that Plaintiff “worked at the substantial gainful activity level each year from 2005 to 2010, except for 2009[,]” Tr. 14-15, the only other indication that he considered Plaintiff’s work record was his initial discussion of Plaintiff’s earnings where he compared her “2011 earnings with her annual earnings since 2001, year 2009 excepted . . . .” Tr. 12.

While work history is a factor to be considered in assessing credibility, a good work history will not overcome an ALJ’s legitimate reasons for questioning the severity of a claimant’s report of symptoms. *See Wheeler v. Colvin*, No. CIV.A. 1:13-CV-445, 2014 WL 2157458, at *14 (D.S.C. May 23, 2014). “The requirement that the ALJ make a credibility determination based on [the objective medical findings, the evidence of record, and the claimant’s testimony and conduct at the administrative hearing] would be meaningless if a long

18

work history *standing alone* established 'substantial credibility.'" *Jeffries v. Astrue*, No. 3:10-CV-1405, 2012 WL 314156, at *25 (S.D.W. Va. Feb. 1, 2012) (emphasis in original). While a long work history is commendable, in and of itself it does not undermine the ALJ's credibility assessment. "[T]he ALJ's mere failure to mention [the claimant's] work history explicitly does not warrant remand or reversal in the face of his otherwise supported findings." *Terrell v. Colvin*, No. 2:14CV14, 2015 WL 966256, at *13 (E.D. Va. Mar. 4, 2015) (citing *Cooper v. Astrue*, 4:10CV110, 2011 WL 6742500, at *7 (E.D. Va. Nov. 8, 2011) *report and recommendation adopted,* 4:10CV110, 2011 WL 6749018 (E.D. Va. Dec. 22, 2011)).

Here, the ALJ stated that he carefully considered the entire record. Tr. 16. The Fourth Circuit Court of Appeals has held that "[w]hile the Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based,' 42 U.S.C. § 405(b)(1), 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir.2005) (per curiam)). In *Reid*, the appeals court concluded that the Commissioner "stated the whole record was considered, and, absent evidence to the contrary, [the court] take[s] her at her word." *Id.* (citing *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter")). Here, although he did not explicitly address Plaintiff's extensive work history, the decision illustrates that the ALJ properly evaluated Plaintiff's symptoms under the two-part test established in *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). The undersigned recommends a finding that the ALJ's failure to discuss Plaintiff's work history "does not warrant

remand or reversal in the face of his otherwise supported findings." *Terrell v. Colvin*, 2015 WL 966256, at *13.

            3.       Effect of Plaintiff's Obesity

Plaintiff alleges that although the ALJ recognized her obesity adversely affected her lumbar spine impairments, "he failed to include specific findings and a proper analysis of how and to what extent her weight affected her condition and the functional limitations which resulted therefrom." Pl.'s Br. 18-19. The Commissioner argues that "the ALJ discussed and accounted for Plaintiff's obesity when determining that Plaintiff did not have an impairment or combination of impairments that met or equaled any section of the Listing of Impairments . . . and also in determining that Plaintiff was not disabled within the meaning of the Act." Def.'s Br. 14-15.

> SSR 02–01p sets forth the policy on obesity and provides:
>
> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

SSR 02-1p, 2002 WL 34686281, at *6. Here, the ALJ addressed Plaintiff's obesity and found:

> The claimant's obesity is well established by the claimant's testimony and the overall record. She testified that she was 5 feet 9 inches tall and weighed 248 pounds. Medical records document her weight has ranged from about 231 to 254 pounds. I find her obesity adversely impacts upon her lumbar spine impairments.

Tr. 14. The ALJ then discussed Plaintiff's impairments related to her lumbar spine starting from her work-related back injury in 2005 and treatment in 2009, her lumbar fusion in November of 2009, progress notes in 2010, additional lumbar surgery in January 2011, treatment through May 2012, and the consultative examination in October 2013. Tr. 14-16. After his discussion the ALJ

noted that Plaintiff's "impairments, individually or in combination, do not meet or equal [Listings] criteria." Tr. 16.

Initially the undersigned notes that Plaintiff has not presented any evidence that indicates her weight limits her in any way or that it is an impairment. Plaintiff makes no reference to any evidence in the record concerning her obesity's impact on her ability to work or perform any functional activities. Furthermore, Plaintiff did not allege in her application for disability or at the hearing—where she was represented by counsel—that her obesity was disabling. In fact, she testified that her weight was the typical amount she has weighed over her adult life with no significant change. Tr. 45.  The ALJ discussed substantial evidence supporting the level of functioning detailed in the RFC, including the opinions of medical providers and Plaintiff's ability to engage in a variety of activities. Plaintiff points to no medical evidence to support the existence of a functional limitation on the basis of her obesity. Any alleged error of the ALJ in failing to provide additional explanation of his consideration of Plaintiff's obesity is harmless in the absence of evidence that his RFC assessment would have been different. *See Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). Accordingly, the undersigned recommends a finding that the ALJ did not err in his analysis of Plaintiff's obesity and functional limitations.

### 4.    Plaintiff's Education

Plaintiff asserts that the ALJ's finding that she "had a high school education" was factually incorrect as she testified that she did not complete high school. Pl.'s Br. 19. Plaintiff alleges this error affects how the Medical Vocational Rules ("Grids") are applied, it reduces the type and number of available jobs, and it may have affected the testimony of the VE regarding

alternative work Plaintiff could perform. *Id.* The Commissioner argues that "the ALJ properly accounted for Plaintiff's education level in his RFC finding" and under the Grids Plaintiff would not be considered disabled if she had less than a high school education but was able to communicate in English. Def.'s Br. 16.

On her form Disability Report Plaintiff noted that she completed the 12th grade and did not attend special education classes. Tr. 182. At the administrative hearing Plaintiff testified initially that her highest level of education was the twelfth grade, Tr. 30, but upon questioning by her counsel she clarified that she "went through the twelfth grade I only had one subject of getting a high school diploma." Tr. 45.

The Grids are guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.* In evaluating a claimant's educational level, the Regulations establish particular categories including illiteracy, marginal education, limited education, and high school education and above. 20 C.F.R. § 404.1564(b). For purposes related to Plaintiff's argument, the following categories apply:

> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564(b)(3)-(4). The ALJ noted in his decision that Plaintiff "testified that she had a 12th grade education, then corrected it to an 11th grade (in a disability report, she indicated she had completed the 12th grade in 1983[Exhibit 2E, page 3])." Tr. 13. The ALJ determined the Plaintiff "has at least a high school education and is able to communicate in English." Tr. 19.

Once an ALJ determines a claimant's RFC, he may use the Grids to determine the claimant's level of disability and potential for employment. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The ALJ found that based on the record Plaintiff had the RFC to perform sedentary work with certain exertional limitations. Tr. 16. The ALJ noted that if Plaintiff had the RFC to perform the full range of sedentary work "a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.21." Tr. 19. Rule 201.21 is found in Table 1 of the Grids that determines disability for individuals limited to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Rule 201.21 refers to a younger individual, age 45-49, who is a high school graduate with skilled or semi-skilled skills that are non-transferable and that Rule concludes that such an individual is "not disabled." However, Plaintiff would still be found "not disabled" even under Rules 201.18, 201.19, and 201.20 which apply to younger individuals with limited or less education and with either unskilled, non-transferable skilled or semi-skilled skills, or transferable skilled or semi-skilled skills. *Id.*

If the ALJ were to mechanically apply the Grids they would direct a finding of not disabled based on Plaintiff's RFC for sedentary work. However, because the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [sedentary] level of work has been impeded by additional limitations" he made use of a VE to consider whether jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 19. Plaintiff's actual educational level (attending through the 12th grade, but not graduating) was

23

established at the hearing prior to the VE testimony. Therefore, when the VE considered the hypotheticals posed by the ALJ and was asked to assume an individual of Plaintiff's same education, he knew Plaintiff's educational level. Given certain vocational factors the VE testified that Plaintiff could perform the unskilled sedentary jobs of assembler, quality control examiner, and hand packer. Tr. 49. "[W]here an ALJ chooses to use a VE and propounds appropriate hypotheticals including all of the claimant's impairments and limitations to the VE, and where the VE's response is adequately supported by available information, the VE's opinion is substantial evidence upon which the ALJ's disability determination may rest." *Gray v. Colvin*, No. 5:14-CV-01172-JMC, 2015 WL 5782076, at *16 (D.S.C. Sept. 30, 2015) (internal citations omitted). Because the ALJ employed the services of a VE who performed an individualized analysis of the jobs that could be performed by Plaintiff taking into consideration Plaintiff's education, and because the Grids would direct a finding of "not disabled" even if Plaintiff had limited education, the undersigned finds any allegations of error are without merit. Furthermore, even if the ALJ erred by finding Plaintiff had a high school education such error was harmless. *Mickles v. Shalala,* 29 F.3d at 921.

5.     Questions Posed to the VE

Plaintiff asserts that the ALJ did not include certain limitations in his hypothetical questions to the VE—namely Dr. Rana's four-hour limitation for sitting and lack of high school education—and therefore the ALJ committed reversible error. Pl.'s Br. 20. The Commissioner contends that "the ALJ generously accounted for all of Plaintiff's credibly established limitations in his RFC determination for a range of unskilled, sedentary work." Def.'s Br. 17.

At the administrative hearing the ALJ used a VE to opine on jobs Plaintiff could perform given her vocational profile of "age, education, and work experience, limited to sedentary work"

with various postural and environmental limitations. Tr. 48. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d at 50. "[R]equiring the testimony of a vocational expert is discretionary[,]" *Hall v. Harris,* 658 F.2d 260, 267 (4th Cir. 1981), and an ALJ is afforded "great latitude in posing hypothetical questions[,]" *Koonce v. Apfel,* 1999 WL 7864, at *5. While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the questions need only reflect those impairments supported by the record. *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (citing *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987)). However, the ALJ was not obligated to accept or rely on the VE's testimony in response to limitations that are not supported by the record. *Youkers v. Colvin*, 2014 WL 906484, at *11 (S.D. W. Va. Mar. 7, 2014).

Here, the ALJ accounted for all of Plaintiff's credible limitations in his RFC assessment and found Plaintiff could not perform her PRW, but the VE identified jobs that a person with Plaintiff's vocational profile could perform. As discussed above, the ALJ appropriately considered Dr. Rana's opinion and accorded it only moderate weight, and the VE was well aware of Plaintiff's educational level. Accordingly, the undersigned recommends a finding that the ALJ's hypothetical to the VE fairly set out Plaintiff's credible limitations.

6.     The ALJ's Final Determination

Plaintiff submits that because of errors made by the ALJ, his conclusion that Plaintiff was not disabled is not supported by substantial evidence and the denial of benefits "is not based upon evidence which a reasonable person would accept in support of the denial of benefits by the [Commissioner]." Pl.'s Br. 21. The Commissioner asserts that "substantial evidence supports the ALJ's determination that Plaintiff was not disabled, because he reasonably captured Plaintiff's

credibly supported functional limitations consistent with the medical evidence and determined through the use of a VE than an individual with Plaintiff's functional limitations could still perform a significant number of jobs that exist in the national economy." Def.'s Br. 20.

"In evaluating whether or not the ALJ's ultimate conclusion is supported by substantial evidence, this court can do no more than require that the ALJ carefully consider the evidence, make reasonable and supportable choices and explain his conclusions." *McCall v. Apfel,* 47 F. Supp. 2d 723, 731 (S.D.W.Va. 1999). "[T]he Commissioner, not the court, is charged with resolving conflicts in the evidence." *Belcher v. Apfel,* 56 F.Supp.2d 662, 665 (S.D.W.Va.1999). "Nevertheless, the courts 'must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Id.* (quoting *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974)).

In a detailed decision the ALJ took into account the medical evidence, Plaintiff's impairments and subjective complaints, and her activities of daily living and determined she is capable of doing a range of sedentary work. The undersigned has scrutinized the record as a whole and concludes that the ALJ considered the evidence and made a supportable choice in determining Plaintiff was not under a disability. Although Plaintiff may disagree with the determinations made by the ALJ, the court's role is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *See Craig,* 76 F.3d at 589. Substantial evidence supports the ALJ's determination that Plaintiff is not disabled and the undersigned recommends a finding that the ALJ reached a rational conclusion that was supported by substantial evidence in the case record.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

October 12, 2016                                Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**